Filed 12/6/22 P. v. Giusto CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>JACQUELINE NICOLE GIUSTO,<br><br>　　Defendant and Appellant. | H047363<br>(Santa Clara County<br>Super. Ct. No. C1643202) |

A jury convicted defendant Jacqueline Nicole Giusto of assault causing great bodily injury and found true an enhancement allegation that she personally inflicted great bodily injury. Before sentencing, defendant admitted allegations that she had a prior serious felony conviction and a prior strike conviction. Those admissions increased her sentence to an aggregate term of 11 years in prison. Defendant contends the judgment must be reversed and the case remanded for a new trial on the prior conviction allegations because she was not advised of the consequences of admitting them. An admission of a prior conviction that increases the punishment for an offense must be made knowingly and intelligently. Because the record does not reflect that defendant knew and understood the consequences of her admission, we will reverse the judgment and remand for a new trial solely on the prior conviction allegations.

## I. BACKGROUND

This case stems from an altercation in a Home Depot parking lot, where defendant and a man named David Russell attacked a woman, repeatedly punching and kicking her.

Defendant aggressively confronted the woman in the parking lot and grabbed her by the hair. After the woman threw a hot casserole at defendant, Russell and defendant grabbed her, held her down, and began hitting her. She was punched in the face five to 10 times and kicked in the stomach at least three times. After the initial attack, the woman kicked Russell (who was armed with a knife). He responded by punching her in the head. The woman suffered facial lacerations requiring 23 stitches, bruises on her face, and a sore abdomen.

The district attorney charged Russell with assault likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4)); criminal threats (Pen. Code, § 422); and exhibiting a weapon (Pen. Code, § 417, subd. (a)(1)). The information alleged Russell had previously been convicted of two prior strike offenses, as defined by Penal Code sections 667, subdivision (a) and 1192.7. Defendant was charged with assault likely to cause great bodily injury, with the allegation that she personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)). The information alleged she had a prior strike conviction, as defined by Penal Code sections 667, subdivision (b) through (i) and 1170.12, and a prior serious felony conviction, as described in Penal Code section 667, subdivision (a). Both recidivist allegations were based on the same conviction for assault causing great bodily injury. Defendant and Russell were tried together. The court bifurcated trial on the prior conviction allegations so that it would occur, if necessary, only after the jury reached verdicts on the substantive offenses.

The jury convicted defendant and Russell as charged. Defendant, having previously agreed to waive her right to a jury trial on the prior conviction, then admitted the allegation that she had been convicted of a strike offense. (Russell did not waive trial; his priors were tried to the jury and found true.) The trial court sentenced defendant under the three strikes law to 11 years in prison: three years for assault likely to cause great bodily injury, doubled to six years for the prior strike under Penal Code section 667,

2

subdivisions (b) through (i) and section 1170.12, plus a five-year enhancement under Penal Code section 667, subdivision (a).

## II. DISCUSSION

Defendant contends her admission of the prior conviction allegations is invalid because the court did not first explain the consequences to her. The constitutional right to due process requires that before admitting guilt for a criminal offense, the accused must know and understand what that decision entails. (*Boykin v. Alabama* (1969) 395 U.S. 238, 244 [accused must have "a full understanding of what the plea connotes and of its consequence"].) The defendant must understand that pleading guilty means giving up certain constitutionally guaranteed rights, such as the right to trial by jury and the right to confront adverse witnesses. (*People v. McClellan* (1993) 6 Cal.4th 367, 375, citing *Boykin* and *In re Tahl* (1969) 1 Cal.3d 122.) The defendant must also understand all direct consequences that come from the admission. (*People v. McClellan*, *supra*, at p. 375.)

To ensure defendants understand the rights they are giving up by admitting guilt and the consequences of that decision, trial courts must advise them of their constitutional rights and all direct consequences of the admission. (*People v. McClellan*, *supra*, 6 Cal.4th 367, 375.) Important here, the requirement that defendants be so advised applies not only to admissions of guilt for substantive offenses, but also to admitting prior conviction allegations that increase punishment. (*In re Yurko* (1974) 10 Cal.3d 857, 863.)

Defendant was never advised that admitting the prior conviction allegation would significantly increase her sentence, extending her prison commitment by eight years. The perfunctory way the trial court took her admission was insufficient to ensure she understood the consequences: "THE COURT: Okay. So, Ms. Giusto, let me ask you— she's charged with one strike prior. 667(b) through (i) and 1170.12. It's a prior of 245. And then 12022.7. Docket C1367636. That was in Santa Clara County.

3

That's commonly referred to as a strike. [¶] Ms. Giusto, do you admit that that is, in fact, true? [¶] [MS. GIUSTO]: Yes, I do, Your Honor. [¶] THE COURT: Then the same prior is charged, the exact same one, under 667(a), which is a different way of charging the same prior. [¶] And you admit that that prior is true, in fact? [¶] [MS. GIUSTO]: Yes, I do, Your Honor. [¶] THE COURT: All right. So she's admitting both of those priors." Because admitting the prior conviction resulted in an additional eight years in prison, the trial court was required to advise defendant of that direct consequence to ensure the admission was knowing and voluntary. Not doing so was error.

Failure to the give required advisements to a defendant before taking a prior conviction admission does not necessarily require reversal. (*People v. Cross* (2015) 61 Cal.4th 164, 179.) The dispositive question is whether the admission is knowing and voluntary. If the record affirmatively shows under the totality of the circumstances that the defendant—despite not receiving an express admonition—knew and understood the rights being waived and the consequences of admitting guilt, then there is no constitutional violation and no reversible error. (*Ibid*.) But we find nothing in the record here to demonstrate defendant was aware of the consequences of admitting the prior conviction at the time she made the admission. We therefore cannot be assured the admission was knowing and voluntary, and reversal is required.

The Attorney General argues defendant forfeited any challenge to the voluntariness of her admission because she never objected to the trial court's failure to advise her about its consequences. We reject that argument because a contention that a prior conviction admission did not meet constitutional standards cannot be forfeited. (*People v. Cross*, *supra*, 61 Cal.4th 164, 173.) The Attorney General relies on *People v. Wrice* (1995) 38 Cal.App.4th 767, 771, which found forfeiture when a defendant who was not advised of the increased sentence triggered by admitting a prior conviction did not object before sentencing. But the California Supreme Court has since decided, in *People v. Cross*, *supra*, 61 Cal.4th 164, that when a defendant contends the trial court did

4

not adequately ensure a prior conviction admission was knowing and voluntary, that claim cannot be forfeited. (*Id.* at p. 173.) We follow *Cross*, as we must, and find no forfeiture. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Because we conclude the judgment must be reversed and defendant granted a new trial on the prior conviction allegation, we do not reach several other issues she raises. We need not address defendant's contention that the trial court abused its discretion by not striking her prior conviction at sentencing under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504. We likewise need not resolve defendant's claim that the abstract of judgment incorrectly reports the offense she was convicted of, since a new abstract must be prepared on remand.

Finally, the parties agree that under *People v. Frahs* (2020) 9 Cal.5th 618, the Penal Code section 1001.36 mental health diversion procedure applies retroactively to defendant because her case was not yet final at the time that statute took effect. On remand, the trial court will have the opportunity to conduct a mental health diversion eligibility hearing, to the extent required by Penal Code section 1001.36.

## DISPOSITION

The judgment is reversed for resentencing. The jury verdicts shall remain. The matter is remanded with instructions to vacate defendant's sentence and to vacate her admission of the prior conviction alleged in the information. Defendant can be retried on the prior conviction allegations within the time provided for by law. The trial court shall resentence defendant and a new abstract of judgment shall be prepared.

_____
Grover, J.

**I CONCUR:**


_____
Greenwood, P. J.

**H047363**
*People v. Giusto*

Lie, J., Dissenting:

Where the validity of a defendant's plea or admission of prior conviction allegations is at issue, "[t]he failure to properly advise a defendant of his or her trial rights is not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' " (*People v. Cross* (2015) 61 Cal.4th 164, 179 (*Cross*); see maj. opn., *ante*, at p. 4.) But the failure to properly advise a defendant of a direct penal consequence of her plea or admission is not a basis for reversal unless "the defendant establishes that he or she was prejudiced by the misadvisement, i.e., that the defendant would not have entered the plea of guilty had the trial court given a proper advisement.' [Citation.]" (*People v. McClellan* (1993) 6 Cal.4th 367, 378 (*McClellan*), quoting *In re Moser* (1993) 6 Cal.4th 342, 352.) Accordingly, although the California Supreme Court in *Cross* rejected application of the forfeiture doctrine to error in the advisement of trial rights, a majority of that court in *McClellan* found the defendant's failure to object at sentencing to the imposition of undisclosed direct penal consequences to be all but dispositive. (*McClellan*, *supra*, 6 Cal.4th at p. 378.)

I agree with my colleagues in the majority that the trial court here erred by failing to advise appellant Jacqueline Nicole Giusto of the direct penal consequences of admitting the prior conviction allegations in the operative information. As a matter of policy, I also respect the majority's willingness to extend the *Cross* standard of prejudice to a trial court's failure to advise a defendant of the direct penal consequences of such an admission. Whatever the source of either the duty to advise or the right or consequence at issue, a defect in the required advisement undermines the voluntariness of a defendant's waiver. As the dissent noted in *McClellan*, "In short, the majority contend that because of counsel's failure to raise the issue at sentencing, the defendant will be subject to punishment for the rest of his life." (*McClellan*, *supra*, 6 Cal.4th at p. 384 (dis. opn. of Mosk, J.) [adding "No court should callously compel that result."].)

The high court in *Cross*, however, gave no indication that we might disregard its narrow focus on the advisement of trial rights, or that it intended to limit or abrogate its holding decades earlier in *McClellan.* And two years after *Cross*, the court cited *McClellan* and noted with approval what it acknowledged as *McClellan*'s application of a *Watson*[1] standard. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 181-182.) Indeed, the majority here cites to *McClellan,* acknowledging its continuing viability, albeit for a different proposition. (Maj. opn., *ante*, at p. 3.) Unless and until *McClellan* is overruled, I believe we are obliged to follow it here. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.) Accordingly, I respectfully disagree with the majority view that it is *Cross* that governs the outcome here. (Maj. opn., *ante*, at pp. 4-5.)

Under what I believe we must accept as the controlling standard of prejudice, Giusto has not met her burden of establishing that, had she been properly advised, she would not have admitted the prior conviction allegations. As in *McClellan*, "the record of the trial court proceedings contains no evidence . . . concerning the bearing of [the direct penal consequence] upon defendant's decision to plead guilty." (See *McClellan*, supra, 6 Cal.4th at p. 378.) As in *McClellan*, Giusto did not object at sentencing to the imposition of those direct penal consequences—the doubling of her three-year base term under Penal Code section 667, subdivision (e)(1) and the five-year enhancement under Penal Code section 667, subdivision (a).

Even under *Cross*, however, the totality of the circumstances here—beyond the mere failure to object at sentencing—suggests that Giusto would have admitted the prior conviction allegations even if the trial court had properly advised her of the direct penal consequences of her admission. In *Cross*, the record reflected only that "[a]fter counsel read the stipulation in open court, the trial court immediately accepted it. The court did

---

[1] *People v. Watson* (1956) 46 Cal.2d 818, 836.

2

not ask whether Cross had discussed the stipulation with his lawyer; nor did it ask any questions of Cross personally or in any way inform him of his right to a fair determination of the prior conviction allegation. [Citation.] The stipulation occurred during the prosecutor's examination of the first witness in the trial; the defense had not cross-examined any witness at that point." (*Cross*, *supra*, 61 Cal.4th at p. 180.)

By the time Giusto expressly waived her right to trial on the prior conviction allegations, however, she had already admitted the fact of that prior conviction in her trial testimony, her trial counsel having unsuccessfully moved in limine to exclude or sanitize it. By that time, Giusto had been represented by two successive independent attorneys— retained counsel through the preliminary hearing and arraignment on the information,[2] and the Alternate Public Defender, whose competence at trial has been subject to no criticism in this appeal. Through counsel, Giusto volunteered her waiver of trial on the prior conviction allegations at the outset of what was to have been that bifurcated proceeding, as the prosecutor was marking exhibits described as certified copies of the convictions for identification, and as the jury that had just returned verdicts of guilty against Giusto and her codefendant awaited their role in the codefendant's priors trial. After trial, Giusto retained a third attorney, who litigated Giusto's sole challenge to the consequence of the admitted prior conviction allegations, her motion to dismiss the admitted strike allegation pursuant to Penal Code section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 487. To be sure, the post-admission filing of a *Romero* motion is not dispositive of whether Giusto, at the time of her admission, would have proceeded with the bifurcated trial had the trial court properly advised her of direct penal consequences. But its filing suggests her awareness of the strike's effect on her sentence at least as of the time of its filing; and the absence of any motion to withdraw

---

[2] The cover sheet for the original and also the operative amended information, under a column marked "Alleg. Effect," identified the effect of the serious felony prior allegation as "5" and the effect of the strike prior as "see code."

the admission of the prior allegations—by successor counsel who bore no responsibility for that admission—strongly suggests that Giusto had given him no reason to believe that misapprehension of the direct penal consequences of the prior had induced or otherwise factored into her admission. These circumstances, taken as a whole, materially distinguish Giusto's challenge to the validity of her admission from the record before the court in *Cross*.

For these reasons, I respectfully dissent from the majority's holding that Giusto's admission of her prior strike and serious felony prior must now be vacated. I would further conclude, given our deferential standard of review, that the trial court did not abuse its discretion in declining to dismiss the strike allegation. I would instead order the correction of the abstract of judgment to reflect the actual offense of conviction and conditionally reverse and remand with directions to conduct a diversion eligibility hearing under Penal Code section 1001.36.

_____

LIE. J.

*People v. Giusto*
H047363